**UNITED STATES DISTRICT COURT**
**FOR THE**
**EASTERN DISTRICT OF VIRGINIA**

| | | |
|---|---|---|
| LIDIA SCINSKI | ) | |
| | ) | |
| On behalf of herself and a class of similarly | ) | |
| situated individuals, | ) | |
| | ) | Case No.: |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | CLASS ACTION COMPLAINT |
| v. | ) | |
| | ) | |
| LLOYD J. AUSTIN, III | ) | JURY TRIAL DEMANDED |
| Secretary of Defense | ) | |
| 1000 Defense Pentagon | ) | |
| Washington D.C., 203500-0001 | ) | May 16, 2024 |
| (in both his official capacity), | ) | |
| | ) | |
| _____ | ) | |

**CLASS ACTION COMPLAINT**

COME NOW, Named Linda Scinski ("Named Plaintiff") *et al.,* together with as yet unidentified Plaintiffs who may be party to this Class Compliant ("Plaintiffs"), by and through their attorneys, and state the following in support of their Class Complaint and Jury Demand against Lloyd J. Austin III, *et al.,* ("Defendant" or "the Department").

**INTRODUCTION**

1)      This action arises out of the discriminatory policies that the Department of Defense ("DoD" or "Department") inflicted on likely thousands of its employees during the COVID-19 pandemic of 2020 to 2023.

2)      DoD's stated mission is "to provide the military forces needed to deter war and protect the security of our nation." As part of its mission related to its personnel, the

1

Department's website states:

> We are committed to making the DoD a workplace of choice that is characterized by diversity, equality, and inclusion. We remain steadfast in our commitment to promote an environment *free from barriers that may prevent personnel from realizing their potential* and rising to the highest levels of responsibility within the Department. . . . We believe diversity is the key to innovation, inclusion is imperative for cohesive teamwork, and equality is critical to Total Force readiness."

> Office for Diversity, Equity, and Inclusion – Department of Defense website, https://diversity.defense.gov/DoD-Diversity-and-Inclusion-Initiatives/ (emphasis added).

3)      Yet the Department's adoption of mandatory COVID-19 vaccines failed to "promote an environment free from barriers that may prevent personnel from realizing their potential and rising to the highest levels of responsibility within the Department." *Id.*

4)      To the contrary, DoD treated its religious employees with contempt and disdain, as it failed in its duty to accommodate them, treated them much worse than employees who did not seek religious exemptions, and created a hostile work environment in which animus toward religious objectors was omnipresent.

5)      In implementing Safer Federal Workforce Task Force recommendations, DoD, through its leadership, required its employees to get injected with the COVID-19 vaccine, brought to market at "warp speed,"[1] despite their sincere religious beliefs against it.

6)      In the instant case, Plaintiff, representing civilian employees of DoD, lived under constant fear and duress, including the threat of discipline and termination if she did not follow a

---

[1] Three (3) separate COVID-19 EUA experimental unapproved medical products have been developed and used in the U.S.  The manufacturers are Moderna, Pfizer-BioNTech, and Johnson & Johnson. None of the products is a vaccine in the traditional meaning of the word. Vaccines developed to eliminate diseases like polio, smallpox and the measles provide individuals with immunity from contracting the condition. These products do not provide individuals with immunity from contracting COVID-19, and they do not stop transmission of the disease. These products are gene-altering experimental therapies and should not be confused with fully approved, FDA sanctioned "vaccines."  Nevertheless, for purposes of expediency, Plaintiffs will use the generic term "vaccine," but do not intend to imply official "vaccine" status, as the term is ordinarily defined.

mandate that has since been enjoined as likely unlawful,[2] and since abandoned, or agree to arbitrary, invasive, and unapproved testing, distancing, and masking protocols for which the Department provided no religious accommodation. As such, she was put in the untenable position of being forced to choose between her livelihood and being faithful to the deeply held religious beliefs.

7)    Plaintiff Lidia Scinski is the Putative Class Agent ("PCA") and represents the potential class of all DoD civilian employees who suffered religious discrimination at the hands of the government based on its COVID-19 policies, which included the imposition of adverse and unapproved consequences (EUA testing, and EUA mask wearing and distancing) that were arbitrary and capricious on those who refused to comply with the mandate for religious reasons.

## PARTIES

8)    Plaintiff and PCA Lidia Scinski has worked as a teacher for DoD since August of 2017. She works in Aguadilla, Puerto Rico. Plaintiff (and PCA) Brooke Stadler worked for DoD beginning on July 31, 2008, until she was constructively discharged on June 1, 2022. She reported to the Department of Defense Education Activity, where she was employed as an elementary school teacher.

9)    Defendant Lloyd Austin is the Secretary of Defense, and oversees the Department of Defense, which is an agency of the United States Government. The Secretary of Defense acts as the principal defense policymaker and adviser. Secretary Austin is sued in his official capacity with respect to the Title VII.

## JURISDICTION AND VENUE

10)    Plaintiff's claims arise out of Defendants' violation of Title VII.

---

[2] *See, Feds for Medical Freedom v. Biden*, 63 F.4th 366 (5th Cir. 2023)

3

11)     This Court has jurisdiction under 5 U.S.C. §§ 701–706, and 28 U.S.C. §§ 1331, 1346, 1361, 2201, and pursuant to the Court's equitable powers.

12)     The Court also has jurisdiction pursuant to Title 28 U.S.C §1332 and 28 U.S.C. §1343(a)(4).

13) The Court has jurisdiction, and Venue is proper, under 42 U.S.C. §2000e-5(f)(3), because the Department of Defense is headquartered at the Pentagon in Arlington, VA.

**STATEMENT OF FACTS**

Named Plaintiff Lidia Scinski

14)     Plaintiff and Putative Class Agent Lidia Scinski has worked for the Department of Defense Education Activity (DODEA) since August of 2017. Her work station at all relevant times was Ramey Unit School in Aguadilla, Puerto Rico, where she served as a second grade teacher. Before that assignment, she worked in various school districts throughout the state of California for about 20 years.

15)     On November 5, 2021, she filed a religious exemption request for the COVID-19 vaccination.

16)     On January 25, 2022, Assistant Principal Nichole Walker handed her a letter indicating that the Department had selected her as "identified and enrolled in the mandatory COVID-19 screening testing program."

17)     The letter included a testing appointment of January 28, 2022 at 11:25 am at the school nurse's office.

18)     On January 27, 2022, Ms. Scinski sent Mr. Eric Werner, school principal, an email informing him that she was not refusing to take the covid-19 test, but that she was willing to take a less intrusive, saliva-based test instead.

19)    The email explained that based on her religious beliefs, she could not accept the test they were offering at school.

20)    On January 28, 2022, at approximately 12:00 pm, the Department placed Ms. Scinski on paid administrative leave and barred her from all DoDEA facilities, specifically the school where she worked.

21)    During this time on admin leave, the agency did not provide any information as to how long she would be excluded/barred from doing the job she loved.

22)    On February 4, 2022, she submitted a Reasonable Accommodation Request for a saliva-based test and a formal request for saliva-based test to Kent Worford, Mid-Atlantic District Superintendent.

23)    While she was on administrative leave, she received daily emails telling her to test. On some days, these emails came twice.

24)    On December 15, 2021, I receive a letter informing me that on December 7, 2021 there was a potential unauthorized disclosure of her Personally Identifiable Information (PII), specifically in the Vaccination Exemption function.

25)    On February 24, 2022, Ms. Scinski received an email from Mr. David Walton, Branch Chief Disability, Diversity, and Inclusion Branch, with the subject line that read: "List of teachers we've requested to be exempted from Covid-19 testing."

26)    This email included the names of three other teachers, along with hers (another PII breach).

27) This gave her hope that her nightmare of discrimination would be over soon.

28)    She immediately forwarded the email to her principal asking what this email meant and letting him know that she was eager to return to work.

5

29)     Following her inquiry, Mr. Walton informed her that the email was sent to her in error and directed her to delete and disregard.

30)     On April 6, 2022, she received an email informing her that the Department had denied her Reasonable Accommodation Request for a saliva-based test because of the time it takes to yield test results compared to the nasal swab test.

31)     This was devastating to Ms. Scinski, but she maintained hope that the request she had submitted to the Mid-Atlantic District Superintendent might still receive approval.

32) On April 14, 2022, she submitted a Request for Reconsideration.

33)     On May 6, 2022, she received an email notice that the agency had started the Covid-19 weekly testing program effective May 9, 2022.

34)     The school nurse, Anupama Gowda, scheduled her for an appointment for the school site offered nasal swab Covid-19 test on May 13, 2022.

35)     On May 13, 2022, she did not attend this appointment because she was on sick leave due to an appointment with a forensic pathologist in San Juan.

36)     On Monday, May 16, 2022, however, she presented a negative Covid-19 test, which she had taken at Laboratorio Toledo on May 13, 2022.

37)     The test results were provided in time for her to return to work with minimal impact to the school day.

38)     DoDEA did not accept results of Covid-19 test that she presented, and she was placed on paid administrative leave again effective immediately.

39)     On May 19, 2022, she received a letter of reprimand from Mr. Werner (school principal) for not following instructions, refusing to take the nasal swab test.

40)     The Department dated the letter of reprimand May 19, 2022, prior to the decision

6

on her request for reconsideration of Reasonable Accommodation based on religious beliefs, which was not issued until May 23, 2022.

41)     This violated the agreements that were made between legal and other divisions and union presidents at a HQ COVID meeting on November 18, 2021. At this meeting it was stated that weekly on-site testing would only occur "while waiting for a decision if an exemption request was submitted." It was also stated that "HQ will not provide the 'How' regarding testing. Each school administration will decide the how it will be done." Lastly, it was understood that "Once all exemption requests are reviewed and a decision is issued, as applicable, DoDEA will initiate progressive disciplinary actions."

42)     Given that a decision had not been forthcoming on her vaccine exemption request and that it was issued prior to a decision on her Reasonable Accommodation request, it was an error to write this letter of reprimand and place it in her file.

43)     On May 23, 2022, the Department notified her that her request for reconsideration of Reasonable Accommodation was also denied.

44) Here it became clear that the Department had moved the goalposts.

45)     The reason for denial stated was "In your initial request, dated February 4, 2022, you relied on your DD Form 3177, Request for Religious Exemption to the COVID-19 Vaccination Requirement; however, you did not explain how it supported your request for an alternative form of weekly screening testing as an accommodation. A review of the document indicates it does not address a religious basis for a conflict with the screening testing method in use. Further, your reconsideration request did not provide any additional supporting information in that regard."

46)     If DoDEA had informed her of a need for "supporting information" to why

screening test violates her sincerely held religious beliefs in the initial denial, then she would

have included extensive information in support of that.

47)    On May 26, 2022, the Department barred Ms. Scinski from attending a parent-

teacher event as a teacher.

48) The Department, however, explicitly authorized her attendance as a parent.

49)    On June 6, 2022, she re-submitted her religious accommodation request,

explaining that:

I cannot participate in the covid-19 testing program because to do so would violate my sincerely held religious beliefs. I believe that my body is the temple where The Most High God dwells (1 Cor 6:19-20 What? Know ye not that your body is the temple of the Holy Ghost which is in you, which ye have of God, and ye are not your own? For ye are bought with a price: therefore, glorify God in your body, and in your spirit, which are God's.) and that if I have any doubts, I should pray to God for discernment (Philippians 4:6 Do not be anxious about anything, but in everything by prayer and supplication with thanksgiving let your requests be made known to God.). Protecting my body and God's temple is of the utmost importance to me and I am cautious of everything I put in my body.

She continued,

When I prayed about whether I should expose my body to an invasive nasal swab covid-19 test, I was reminded of multiple things:

1) I must put my trust in God to protect me from all illness. God made me perfect with a strong immune system (Psalm 139:13-14 For you formed my inward parts; you knitted me together in my mother's womb. I praise you, for I am fearfully and wonderfully made. Wonderful are your works; my soul knows it very well.)

2) I do not have a weakened immune system, nor am I transmitting any contagious disease. If anyone close to me becomes ill, it is God's doing. Also, there is nothing the agency can do to protect me because God is in complete control of when and where I will become ill. (Exodus 15:26 Saying, "If you will diligently listen to the voice of the Lord your God, and do that which is right in his eyes, and give ear to his commandments and keep all his statutes, I will put none of the diseases on you that I put on the Egyptians, for I am the Lord, your healer.")

3) Since the beginning of the pandemic, my spirit has not been joyful about any of the man-made medical treatments and/or mandates, such as vaccines and invasive tests. (Proverbs 17:22 A joyful heart is good medicine, but a crushed spirit dries up the bones.) God has put in my heart that introducing these pharmaceuticals into my body is not good medicine and it clearly is hurting my spirit. (Matthew 9:12 "On hearing this, Jesus said, "It is not the healthy who need a

doctor, but the sick."). Furthermore, very few pharmaceutical products are based on scientific merit; profit and greed drive the development, production, and distribution of these substances. In Ecclesiastes 5:10 The Most High God warns us that "Whoever loves money never has enough; whoever loves wealth is never satisfied with their income. This too is meaningless" and I cannot knowingly take part in any sinful acts.

4) The Bible warns us against partaking in sins of the flesh, like sorcery, aka pharmakeia. (Galatians 5:19-20 Now the works of the flesh are evident, which are: adultery, fornication, uncleanness, lewdness, idolatry, sorcery, hatred, contentions, jealousies, outbursts of wrath, selfish ambitions, dissensions, heresies, …) God created all types of medicinal plants to help us heal ourselves naturally. My family avoids pharmakeia, as much as is humanly possible, and only use natural remedies, oils, and treatments. When it comes to healing and care of my body, I trust in The Most High God to protect me and others around me. (Jeremiah 33:6 Behold, I will bring to it health and healing, and I will heal them and reveal to them abundance of prosperity and security.)

My religious beliefs are sincere…My beliefs are my own, and they are sincerely and deeply held.

50)     Throughout the ordeal, Ms. Scinski experienced extreme stress and anxiety, seeking psychological treatment over the loss of her vocation.

51)     Because of the letter of reprimand and the extended periods of leave, Ms. Scinski was rendered ineligible for promotion.

<u>Vaccine Mandate</u>

52)     Health authorities declared COVID-19 to have reached pandemic status in March of 2020.

53)     On December 11, 2020, pursuant to a declaration entitled, *Declaration that Circumstances Exist Justifying Authorizations Pursuant to Section 564 of the Federal Food, Drug, and Cosmetic Act*, 21 U.S.C. § 360bbb-3, the U.S. Food and Drug Administration (FDA) issued an Emergency Use Authorization (EUA) for the pharmaceutical manufacturer Pfizer's vaccine (the "BioNTech" vaccine), which it developed for the prevention of coronavirus disease caused by the severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2)("COVID-19" or "COVID").

54)     On December 18, 2020, FDA issued an EUA for Moderna's vaccine for the

prevention of COVID-19.

55)    On February 27, 2021, FDA issued an EUA for Janssen (Johnson and Johnson)'s COVID-19 vaccine.

56)    On January 20, 2021, President Biden issued EO 13991, which established a Safer Federal Workforce Task Force (the "SFWTF") and required masking and social distancing for all federal employees. The Task Force was charged with "provid[ing] ongoing guidance to heads of agencies on the operation of the Federal Government, the safety of its employees, and the continuity of Government functions during the COVID-19 pandemic." 86 Fed. Reg. 7045 at 7046.

57)    On April 23, 2021, FDA amended its Janssen EUA to warn of a "very rare and serious type of blood clot in people who receive the vaccine."

58)    On September 9, 2021, the President issued Executive Order ("EO") 14043, which required all federal employees to be vaccinated, subject to such exceptions as required by law." 86 Fed. Reg. 50989. EO 14043 tasked every federal agency with implementing the EO to the extent consistent with applicable law, *Id.* at 50990. The Agencies were to receive "implementation" guidance from the SFWTF, which would issue guidance within seven days. *Id.*

59)    Simultaneously, the President stated that while "fully vaccinated" individuals are "highly protected from severe illness even if [they] get Covid-19," and being fully vaccinated renders these individuals "as safe as possible," he was nonetheless issuing vaccine mandates "to protect vaccinated workers from unvaccinated co-workers."[3]

60)    The President laid blame for the spread of COVID-19 squarely on the

---

[3] Katie Rogers & Cheryl Gay Stolberg, *Biden Mandates Vaccines for Workers, Saying, 'Our Patience Is Wearing Thin,'* New York Times, (September 9, 2021, updated November 12, 2021), at https://www.nytimes.com/2021/09/09/us/politics/biden-mandates-vaccines.html.

unvaccinated, saying vaccinated America was growing "frustrated" with the 80 million people

who have not received shots and are fueling the spread of the virus. "We've been patient, but our

patience is wearing thin, and your refusal has cost all of us." *Id.*

61)     Yet as early as August 2021, it was public knowledge that while the vaccine

worked to prevent severe illness and death, it did "not prevent transmission" of the disease,

particularly as it related to the Delta variant, which comprised 93% of all cases at the time.[4]

62)     Given that the vaccine did not protect co-workers from spread of the disease, the

rationale for the vaccine mandate and the associated masking, testing, and distancing protocols

was unfounded at best and knowingly false at worst. However, it underpinned the decisions and

actions of Defendants for the next year and a half.

63)     Even before President Biden's vaccine mandate on September 9, 2021, Under

Secretary of Defense Gilbert Cisneros issued a memorandum to DoD leadership announcing

guidelines for DoD civilian personnel in responding to Covid-19. Memorandum from Office of

the Under Secretary of Defense to Chief Management Officer of the Department of Defense, *et*

*al.*, *Civilian Personnel Guidance for DoD Components in Responding to Coronavirus Disease*

*2019*, March 8, 2020.

64)     This document outlined, among other things, early guidelines for leaders of DoD

civilian employees to follow during the pandemic. *Id.* It covered topics such as teleworking,

alternative work schedules, use of various types of leave due to illness, and guidance on safety

---

[4] Holcombe and Maxouris, *CDC head says COVID-19 vaccines prevent severe illness and death, but they can't prevent transmission*, CNN.COM, (August 16, 2021), at https://www.cnn.com/us/live-news/coronavirus-pandemic-vaccine-updates-08-06-21/h_61de1502e86060f5faf4477339928e33. *See also*, Singanayagam, Ankia, PhD, et al., *Community transmission and viral load kinetics of the SARS-CoV-2 delta (B.1.617.2) variant in vaccinated and unvaccinated individuals in the UK: a prospective, longitudinal, cohort study*, THE LANCET INFECTIOUS DISEASES, October 29, 2021, https://www.thelancet.com/journals/laninf/article/PIIS1473-3099(21)00648-4/fulltext. (British study finding that "fully vaccinated individuals with breakthrough infections have peak viral load similar to unvaccinated cases and can efficiently transmit infection in household settings, including to fully vaccinated contacts")

and hygiene best practices. This memo applied to all DoD civilian employees and established

that the Department was the policymaker and enforcer for all things COVID-19 as it applied to

its civilian employees.

> As provided in reference (a) at Attachment 1, the Department of Defense (DoD) has outlined a specific risk-based framework to guide planning, posture, and actions needed to protect DoD personnel and support mission assurance in response to the novel coronavirus disease (COVID-19).

65)    The memo explains:

> In support of these efforts, the attached civilian workforce guidance identifies authorities and best practices to help the Department minimize risk to its civilian personnel and their families, as well as to ensure the readiness of our force to continue to execute our missions and support our domestic and international partners. DoD Component heads *must take the steps outlined in Attachment 2 to ensure continuity of operations, assess readiness for effective telework, and communicate to the workforce good health and hygiene habits in the workplace* . . . Component heads should ensure this guidance is clearly communicated to all echelons throughout your respective organizations.

*Id.* Emphasis added.

66)    In ordering DoD leadership throughout the Department to follow the steps it

outlined in its memo, the Department set the stage for its implementation of discriminatory

practices that pitted employees with religious objections to the vaccine against their government

employer.

67)    On August 24, 2021, the Secretary of Defense directed the mandatory vaccination

of Service members against COVID-19. Memorandum from U.S. Secretary of Defense, Gilbert

Cisneros to Senior Pentagon Leadership, Commanders of the COMBATANT Commands,

Defense Agency and DOD Field Activity Directors, August 24, 2021, *Mandatory Corona virus*

*Disease 2019 Vaccination of Department of Defense Service Members* ("After careful

consultation with medical experts and military leadership, and with the support of the President, I

have determined that mandatory vaccination against coronavirus disease 2019 (COVID-19) is

necessary to protect the Force and defend the American people).

68)    President Biden issued EO 14043 two weeks later on September 9, 2021.

69)    Defendant Deputy Secretary of Defense officially rolled out President Biden's vaccine mandate to leadership of all civilian employees on October 1, 2021. Memorandum from Deputy Secretary of Defense Kathleen Hicks to Senior Pentagon Leadership, Commanders of the Combatant Commands Defense Agency and DoD Field Activity Directors, *Mandatory Corona virus Disease 2019 Vaccination of DoD Civilian Employees*, October 1, 2021.

70)    In that memorandum, Deputy Secretary of Defense Hicks noted that, "All DoD civilian employees must be fully vaccinated by November 22, 2021, subject to exemptions as required by law." She further noted that "[a]dditional guidance, including procedures for processing vaccination exemption requests, will be published by the Under Secretary of Defense for Personnel and Readiness (USD (P&R)). The USD (P&R) is authorized to rescind this memorandum as necessary for purposes of providing updated guidance."

71)    Deputy Secretary of Defense Hick's order was published to all civilian employees on October 4, 2021.

> All DoD civilian employees must be fully vaccinated by November 22, 2021, subject to exemptions as required by law. Employees are considered fully vaccinated 2 weeks after completing the second dose of a two-dose COVID-19 vaccine or 2 weeks after receiving a single dose of a one-dose COVID-19 vaccine . . . To meet this requirement, individuals must be vaccinated with vaccines that are either fully licensed or authorized for emergency use by the Food and Drug Administration (FDA) (e.g., Comirnaty/Pfizer-BioNTech, Moderna, Johnson & Johnson/Janssen); listed for emergency use on the World Health Organization Emergency Use Listing (e.g., AstraZeneca/Oxford); or approved for use in a clinical trial vaccine for which vaccine efficacy has been independently confirmed (e.g., Novavax). Those with previous COVID-19 infection(s) or previous serology are not considered fully vaccinated on that basis for the purposes of this mandate.
>
> U.S. Department of Defense, *Mandatory Coronavirus Disease 2019 Vaccination of DoD Civilian Employees*, October 4, 2021,

13

https://www.defense.gov/News/Releases/Release/Article/2799045/Mandatory-Coronavirus-Disease-2019-Vaccination-of-DoD-Civilian-Employees/

72)    The guidance further required that employees attest to their vaccination status. ("Employees, including those who have already received COVID-19 vaccines, must be prepared to provide a copy of their COVID-19 vaccine record in order to meet forthcoming procedures for DoD COVID-19 vaccination verification."). *Id.*

73)    Per Deputy Secretary of Defense Hick's order, Under Secretary of Defense for Personnel and Readiness (Cisneros) published additional, more comprehensive guidance on October 18, 2021, that set forth the detailed policies that Plaintiffs would be subject to, including policies that would NOT apply to certain DoD employees and contractors. Memorandum from Under Secretary of Defense to Senior Pentagon Leadership et al., *Force Health Protection Guidance (Supplement 23) Revision 1- Department of Defense Guidance for Coronavirus Disease 2019 Vaccination Attestation, Screening Testing, and Vaccination Verification,* October 18, 2021 ("Force Health Protection Guidance Rev. 1" or "FHP Guidance Rev 1").

74)    The Guidance outlined DoD's policies regarding its vaccine and attestation requirements, testing, masking and distancing protocols, enforcement mechanisms, and requests for religious and medical exemptions.[5] *Id.*

75)    The Guidance made clear that DoD would require employees with religious objections to the vaccine to undergo frequent and burdensome testing, masking, and distancing protocols, which in many cases also violated Plaintiffs' religious beliefs.

---

[5] The FHG policy had been and continued to be updated until it was consolidated with other policy memoranda into a single policy document. "The Department began publishing FHP guidance and policy to address COVID-19 in January 2020. In February 2021, the Secretary of Defense directed the review of all guidance and policy memoranda previously issued for COVID-19. The review was completed in April 2021, and subsequent updates align DoD COVID-19 policy and guidance with current Task Force, OMB, CDC, and OSHA guidance as appropriate." See, Memorandum from Under Secretary of Defense to Senior Leadership, et al.*, Consolidated Department of Defense Coronavirus Disease, Force Health Protection Guidance*, April 4, 2022.

76)     In establishing the enforcement procedure that leaders of DoD civilian employees were to follow, the Guidance stated:

> DoD civilian employees who refuse to be vaccinated, or to provide proof of vaccination, are subject to disciplinary measures, up to and including removal from Federal service, unless the DoD civilian employee has received an exemption or the DoD civilian employee's timely request for an exemption is pending a decision . . .

> *Id.*

> Progressive enforcement actions include, but are not limited, to

> - A 5-day period of counseling and education;
> - A short suspension without pay of 14 days or less with an appropriate notice period. Senior Executive Service members may only be suspended for more than 14 days;
> - Removal from Federal service for failing to follow a direct order.

> *Id.*

77)     The Guidance further stated that "Exemptions will be granted in limited circumstances only where legally required," and that more guidance would be coming. Under Secretary Cisneros directed leaders at that time to "take no action on any exemption requests received from DoD civilian employees." *Id.*

78)     Upon information and belief, the Department did not grant a single religious exemption to the vaccine or to testing, masking, and distancing protocols, yet it granted hundreds of other exemptions for medical waivers.

79)     For example, DODEA provided numerous medical accommodations to employees in the 2020-2021 school year, yet it did not provide any religious exemptions.

<u>Religious Exemption Process</u>

80)     The FHP Guidance was updated on December 20, 2021, to include specific details about how DoD would process religious exemptions. DoD FHP Guidance allowed employees to request an exemption from the vaccine mandate "on the basis of a medical condition or

circumstance or a sincerely held religious belief or practice."

81)    Further, DoD did not follow its normal procedure allowing employees to request a religious accommodation to the vaccine. Instead, in the words of President Biden's own aids, to "render being unvaccinated so burdensome that those who haven't received shots will have little choice other than to get them,"[6] the Department set up a completely separate, and more burdensome, process for those with religious objections to the COVID-19 vaccine.

82)    DoD announced its new process, which applied only to exemptions to the vaccine, in its FHP Guidance Rev. 3 on December 20, 2021.

83)    DoD required its civilian employees to fill out a newly created DD Form 3177 for religious exemptions.

84)    DoD announced the purpose of the form and its authority to make determinations about religious accommodations to the vaccine mandate:

> **Principal Purpose**: the information on this form is being collected *so that the DoD may determine whether to grant your request for a religious exemption* to the COVID-19 vaccination requirement for federal employees pursuant to Executive Order 14043 and in furtherance of COVID-19 workplace safety plans. Consistent with the Religious Freedom Restoration Act of 1993, 32 U.S.C., Chapter 21B, and Title VII of the Civil Rights Act, 42 U.S.C. Chapter 21 Subchapter VI, individuals seeking a religious exemption from the vaccine requirement will submit to DoD supporting information about their religious beliefs and practices in order for DoD to evaluate the exemption request.

85)    The new Form DD 3177 added multiple questions to the standard religious accommodation form, which employees were required to answer. These questions inquired more deeply into employees' personal and private beliefs and actions and were more burdensome than the standard process. Questions on the form required employees to disclose deeply private and

---

[6] Maegan Vasquez, *Biden announces measures to incentivize COVID-19 vaccinations, including a requirement for federal employees*, CNN.com, (July 29, 2021), available at: https://www.cnn.com/2021/07/29/politics/joe-biden-vaccination-requirement-announcement/index.html.

personal information about their religious faith, as well as about other medical conditions, medications, and vaccines they may or may not have taken in the past.

86)     Form 3177 made clear that DoD would make the determination about whether to grant religious exemptions, however, it purported to such delegate decision authority.

> Management official(s) will be designated to serve as Decision Authorities to make decisions concerning requests for exemption from the COVID-19 vaccination requirement, in consultation with the organization's servicing legal office. Decision Authorities will be at an appropriate level within the organization to consider the impact, if any, that granting a request will have on the DoD Component operations and to promote similar cases being handled in a consistent manner, with due regard for the facts and circumstances of each case. Each employee's request must be considered on its own merits.

87)     It also specifically directed the Decision Authority on how to adjudicate such requests.

> In the first instance, Decision Authorities are to determine whether the requestor has met his or her burden to establish that the vaccination requirement imposes a substantial burden on exercise of a sincerely held religious belief. If so, Decision Authorities analyze the request to determine whether the burden on religious exercise is the least restrictive means of furthering the Government's compelling interest in health and safety of the DoD workforce, and the health and safety of members of the public with whom they interact. If vaccination is not the least restrictive means, the exemption will be granted and supervisors will implement the less restrictive means.

88)     Yet, as became evident throughout the events giving rise to these claims, DoD did not allow its leaders to take any action on exemption requests, either in October 2021, at the time the original guidance was published, or any time after that.

89)     Rather, Plaintiffs were left to wonder about when and whether their exemptions would be processed and whether they would be subject to discipline or termination because of their religious beliefs against the vaccine, or they received outright denials regarding testing, masking, and distancing policies, until the President finally and officially rescinded the vaccine mandate on May 12, 2023.

17

90)     DoD paused the vaccine mandate on January 25, 2022, but never told Plaintiffs whether the pause was a final disposition, whether they could still lose their jobs for failing to take the vaccine, or whether they could live safely out from under the looming oppression of a threat that would require them to choose between their faith or their jobs.

<u>Testing / Screening Process</u>

91)     During the pendency of their religious exemption requests, DoD forced Plaintiff to follow protocols of testing, masking, and distancing. Ms. Scinski filed religious accommodation requests to avoid the invasive testing protocols, which DoD denied.

92)     Notably, while civilian employees were required to show proof of a negative COVID-19 testing prior to entering any DoD facilities, the vaccination and physical access requirements did not apply to personnel receiving *ad hoc* access to DoD facilities, (such as delivery personnel), people with access to the grounds, but not the buildings, "personnel accessing DoD buildings unrelated to the performance of DoD business," or to "personnel accessing DoD facilities to receive a public benefit (e.g., commissary; exchange; public museum, . . .)."

93)     These exceptions to the testing protocols demonstrate the arbitrary nature of the procedures and belie the notion that they were necessary for the protection of all workers.

94)     Likewise, employees with pending religious exemptions were subject to travel restrictions for work-related events, training and development activities, which employees without such religious exemption requests did not experience.

95)     Plaintiffs who did not follow the testing protocols were also punished as promised. Ms. Stadler was placed on a leave of absence when she politely declined to engage in the testing procedures after her testing accommodation request was denied.

18

96)     As she feared from the beginning, she was forced to choose between her religion and her livelihood. She ultimately chose her religion and resigned under duress effective June 1, 2022.

97)     These and other inconsistencies in application underscore the arbitrary nature of the vaccine mandate and related restrictions and protocols.

98)     Moreover, the mandates were arbitrary because employees who did not share Plaintiffs' religious objections and accepted the vaccine were also known carriers and transmitters of COVID-19 yet were not required to engage in testing and related protocols.

99)     In Ms. Stadler's own school, for example, 12% of staff (all vaccinated employees) contracted COVID during the 2021-2022 school year.

100)    This data directly contradicts the argument that such measures were mere safety precautions, in place to "protect vaccinated workers from unvaccinated workers."

101)    Religious believers were subject to different, illogical protocols that others did not have to endure. There was no true effort to understand Plaintiffs' religious beliefs, to engage them in dialogue to see how the Department might accommodate their beliefs or to ensure uniformity, consistency and even rationality in the application of their policies. The result was a failure to accommodate Plaintiffs' religious beliefs, leaving Plaintiffs fearful for their livelihoods and their futures.

<u>Temporary Vaccine Rescission</u>

102)    On January 21, 2022, a federal district court issued an injunction against EO 14043 (which was later upheld by the full *en banc* Fifth Circuit Court of Appeals in *Feds for Medical Freedom v. Biden*, 63 F.4th 366 (5th Cir. 2023)).[7]

---

[7] Defendants in that case recently petitioned the United Stated Supreme Court of the United States for a Writ of Certiorari.

103)    DoD suspended its vaccine mandate for the time being but continued implementing its testing / screening protocols.

104)    Finally, on May 12, 2023, President Biden rescinded E.O. 14043, thereby revoking the government-wide COVID-19 vaccine mandate for federal employees.

105)    While this was the right action, particularly given Fifth Circuit Court of Appeal's decision in *Feds for Medical Freedom,* after almost two years, the recission is too little too late.

Original Complaint

106)    Michael Orloff, one of the original Putative Class Agents, filed an individual formal complaint of discrimination and on or about April 18, 2022, moved to certify a class action based on the same claims.

107)    Ms. Scinski was a party to the class charge, with Mr. Orloff as a class agent.

108)    Mr. Orloff received a notice of right to sue letter from the EEOC on April 25, 2023, and has therefore exhausted administrative remedies for himself and the class.

109)    Mr. Orloff, Ms. Brooke Stadler, and Ms. Amy Arzamendi filed a complaint in the Norther District of Texas on July 24, 2023, which they amended on January 26, 2024.

110)    That Court dismissed the complaint on April 16, 2024, without prejudice, finding a failure to state a claim regarding masking and testing protocols, and on grounds of mootness for claims related to the vaccine mandate.

**CLASS ALLEGATIONS**

111)    Certification of a class is appropriate in this action, with Plaintiff Lidia Scinski as a representative class agent.

112)    The proposed class consists of all civilian employees who worked for DoD during the pandemic who filed a religious exemption request to testing protocols and that the

20

Department denied.

113)    Federal Rule of Civil Procedure 23(a) provides four criteria for courts to

determine whether class certification is appropriate:

i)      the class is numerous that joinder of all members is impracticable;
ii)     there are questions of law or fact common to the class;
iii)    the claims or defenses of the representative parties are typical of the claims or defenses of the class;
iv)     and the representative parties will fairly and adequately protect the interests of the class.

114)    Here, Plaintiff meets all four criteria.

115)    She will provide an analysis of these criteria in a forthcoming Motion for Class

Certification.

## COUNT I
## VIOLATION OF TITLE VII 42 U.S.C. § 2000e, *et seq.*
## RELIGIOUS DISCRIMINATION: FAILURE TO ACCOMMODATE

116)    Plaintiff restates the foregoing paragraphs as set forth fully herein.

117)    Plaintiff brings this count against Secretary Austin in his official capacity.

118)    Title VII of the Civil Rights Act of 1964 requires employers to accommodate the

religious practice of their employees unless doing so would impose an undue hardship on the

conduct of the employer's business. 42 U.S.C.S. § 2000e(j), *Groff v. DeJoy*, 143 S. Ct. 2279,

2286 (2023).

119)    As the Supreme Court has stated,

Title VII does not demand mere neutrality with regard to religious practices—that they be treated no worse than other practices. *Rather, it gives them favored treatment*, affirmatively obligating employers not "to fail or refuse to hire or discharge any individual . . . because of such individual's religious observance and practice.

*EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775, 135 S. Ct. 2028, 2034

(2015) (emphasis added and internal citations omitted).

21

120)    To establish a *prima facie* religious accommodation claim, a plaintiff must establish that: "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *Chalmers v. Tulon Co.*, 101 F.3d 1012, 1019 (4th Cir. 1996) (*quoting Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985)).

121)    Once a plaintiff establishes a *prima facie* case, the burden shifts to the employer to demonstrate either that it reasonably accommodated the employee, or that it was unable to reasonably accommodate the employee's needs without undue hardship. *Id.*

122)    The Supreme Court recently clarified that, "'undue hardship' is shown when a burden is substantial in the overall context of an employer's business." That inquiry it described as "fact specific." *Groff v. DeJoy*, 2023 U.S. LEXIS 2790, *28 (2023).

123)    The term "religion" includes:

All aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."

42 U.S.C. § 2000e(j).

124)    As the Supreme Court noted:

The intent and effect of this definition was to make it an unlawful employment practice . . . for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees.

*Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 74 (1977) (emphasis added).

125)    A belief "can be religious even if it is not acceptable, logical, consistent, or comprehensible to others." *US. v. Zimmerman*, 514 F.3d 851 (9th Cir. 2007).

126)    Plaintiffs hold sincere religious beliefs that conflict with Defendants' COVID-19 vaccine mandate and in some cases, its testing mandate. This fact of their faith is self-evident. Plaintiffs risked their careers (threat of job loss, humiliation, placement on administrative leave, loss of travel, training and career opportunities, etc.) to avoid the vaccine and protect their strongly held beliefs.

127)    Plaintiff informed Defendant that her sincerely held religious beliefs conflicted with Defendants' COVID-19 testing mandate and requested religious exemptions outlining those beliefs.

128)    Defendant placed Ms. Scinski on leave, issued a reprimand, and barred her from promotion.

129)    Defendant failed to engage in any interactive process with Plaintiff.

130)    If Defendant had processed Plaintiff's requests for an exemption to the vaccination in any meaningful way, none of these harms would have occurred.

131)    Moreover, the statutory framework for determining reasonable accommodation requires an interactive process and participation by both the employer and the employee. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986) (stating that, consistent with the goals expressed in the legislative history of the religious accommodation provision, "courts have noted that bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business") *Id., see also Brener v. Diagnostic Ctr. Hosp.*, 671 F.2d 141 (5th Cir. 1982)

132)    "Once an employee makes [an accommodation] request, the employer is obligated by law to engage in an interactive process – a meaningful dialogue." *Equal Emp. Opportunity Comm'n v. Chevron Phillips Chem. Co*., 570 F.3d 606, 621 (5th Cir. 2009) (in the context of a

disability).

133)    Defendant neither requested nor proposed that Ms. Scinski participate in any discussion to determine fair and legal accommodations for her religious beliefs. They did not follow up with her to ask questions or make requests for clarifications and they did not make any effort pursue an "acceptable reconciliation for both parties." *Ansonia Bd. of Educ.*, 479 U.S. at 69.

134)    When Plaintiff requested updates, none were available.

135)    Defendant's undue delay in creating a process and responding to Plaintiff's requests for exemption from the vaccine was also unlawful. In the context of a Title VII religious discrimination claim, "'a week-to-week, wait-and-see posture' amounts to no accommodation at all." *EEOC v. Robert Bosch Corp.*, 169 F. App'x 942, 945 (6th Cir. 2006) (*citing EEOC v. Arlington Transit Mix, Inc.*, 957 F.2d 219, 222 (6th Cir. 1991).

136)    Courts have found both delay and denial of religious accommodation are deemed an "injury" in and of themselves. *Doster v. Kendall*, No. 1:22-cv-84, 2022 U.S. Dist. LEXIS 125400, at *10-13 (S.D. Ohio July 14, 2022) (in the context of a Religious Freedom Restoration Act / First Amendment case). See also, *Matos v. Devos*, 317 F. Supp. 3d 489 (D.D.C. 2018) (finding that the delay in providing an accommodation amounts to a failure to accommodate in the ADA context).

137)    As the Fifth Circuit Court of Appeals has held:

> Forcing individuals to choose between their faith and their livelihood imposes an obvious and substantial burden on religion . . . vaccine mandates . . . present a crisis of conscience for many people of faith. It forces them to choose between the two most profound obligations they will ever assume – holding true to their religious commitments and feeding and housing their children. To many, this is the most horrifying of Hobson's choices.

> *Sambrano v. United Airlines, Inc.*, 19 F.4th 839, 841 (5th Cir., 2021).

138) Defendants clearly failed to accommodate Ms. Scinski in violation of Title VII.

<b><u>PRAYER FOR RELIEF</u></b>

139) Plaintiffs respectfully request that the Court:

    a.  Hold unlawful the Defendant's discriminatory COVID-19 testing policies;

    b.  Award appropriate compensatory and punitive damages for injuries suffered;

    c.  Award reasonable attorneys' fees and allowable costs, including under the Equal Access to Justice Act;

    d.  Grant Plaintiffs such other and further relief to which they are justly entitled at law and in equity.

<b>JURY TRIAL</b>

A jury trial is requested in this matter.

Dated: May 17, 2024

By:

E. Scott Lloyd
Virginia Bar # 76989
Lloyd Law Group, PLLC
15 Chester St
Front Royal, VA 22630
(540) 631-4081
scott@lloydlg.com
*Counsel for Plaintiff*